UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

*****************************************
                                        *
Jason E. Basnett,                       *
                                        *
            Plaintiff                   *                COMPLAINT
                                        *                Jury Trial Requested
v.                                      *
                                        *
SRS Distribution, Inc.,                 *
                                        *
            Defendant                   *
                                        *
*****************************************

NOW COMES the plaintiff, Jason E. Basnett, by and through his attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

I.    **Parties**

1.    The plaintiff Jason E. Basnett is a former employee of the defendant and resides at 4 Fineview Circle, Pelham, New Hampshire.

2.    The defendant SRS Distribution, Inc. is a Delaware corporation with a principal place of business located at 5900 S. Lake Forest Drive, McKinney, Texas.  The defendant maintains offices at 31 Flagstone Drive, Hudson, New Hampshire, where the plaintiff reported to work.

II.   **Jurisdiction and Venue**

3.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.  The plaintiff and the defendant are residents of different States, the plaintiff residing in New Hampshire and the defendant having its State of incorporation in Delaware and its principal place of business in Texas.  The amount in controversy exceeds $75,000.00.

4.      The Court also has personal jurisdiction over the defendant because the plaintiff's claims relate to the defendant's conduct in New Hampshire and because the defendant conducts business in New Hampshire.

5.      Venue is proper because a substantial part of the acts and omissions giving rise to this action occurred within this judicial district.

### III.    Facts

6.      Mr. Basnett began employment with the defendant as a truck driver in or around 2009.  He performed his job well throughout his employment.

7.      Mr. Basnett suffered a compensable work-related injury within the meaning of New Hampshire workers' compensation law on or about January 18, 2019, in connection with lifting a heavy door.  Mr. Basnett's treating doctor ultimately diagnosed him with work-related thoracic radiculitis.  At the time of Mr. Basnett's compensable work-related injury, Mr. Basnett earned an average weekly wage of $1,448.16, translating to annual earnings of approximately $75,000.00.

8.      The defendant timely reported Mr. Basnett's work injury to its workers' compensation carrier, and the carrier accepted the claim.

9.      Mr. Basnett was medically restricted from performing his job functions beginning January 23, 2019, effective which date the carrier began paying him temporary total disability benefits pursuant to RSA 281-A:28.

10.     When Mr. Basnett visited his treating doctor on or about April 11, 2019, he continued to suffer pain in the thoracic spine, but his symptoms had improved.  In consultation with his doctor, Mr. Basnett decided to attempt a return to work with modified duties.  Mr. Basnett's doctor released him to work effective April 15, 2019, with a 50-pound lifting restriction.  Exhibit A.

11.     Mr. Basnett began his short-lived return to work on or about April 15, 2019.  His pain became progressively worse over the course of the 3-day period during which he resumed actively working for the defendant.

12.     Mr. Basnett's increased pain upon resuming work-related activities led him to visit his treating doctor on or about April 18, 2019.  The doctor noted "significant discomfort and pain…in the thoracic spine" at this visit.  Mr. Basnett "found that when he was working, the prolonged sitting as part of the driving as well as the significant motion through the vibration in his vehicle also exacerbated his symptoms," the doctor wrote.

13.     Based on the increased symptoms that Mr. Basnett suffered upon his attempt to return to work for the defendant in April of 2019, his treating doctor restricted him from work again effective April 18, 2019.  Exhibit B.

14.     Mr. Basnett proceeded to undergo an extensive course of conservative treatments, and early the week of September 16, 2019, he became hopeful that he would be able to return to work.  He contacted the defendant to advise of his aspiration to return to work the following week following a medical appointment scheduled to occur September 19, 2019.  Mr. Basnett proposed a meeting with the defendant to discuss his role in the defendant's organization upon his return. The defendant initially agreed to such a meeting but soon revoked its agreement, advising Mr. Basnett in a September 17, 2019, text message, "Just wanted to let you know that I just got an email from [corporate] that we have to wait until after you go to doctors to talk about work." Exhibit C.

15.     At the September 19, 2019, medical appointment, Mr. Basnett's doctor decided to release him to work again effective September 23, 2019.  Mr. Basnett proceeded to advise his employer of his work release.

16.     The defendant terminated Mr. Basnett's employment by text message on or about September 23, 2019.  "Jason after talking with [corporate] we are unable to bring you back to work," the text message stated.  Exhibit D.  "Wow fired over a text message," Mr. Basnett responded, flabbergasted at his firing, "Do you mean now or ever?"  Id.

17.     "We needed to terminate you per [corporate]," the defendant replied, directing Mr. Basnett to contact another company representative.  Id.

18.     Mr. Basnett contacted the company representative, who advised him that his employment was terminated because he had exhausted the leave allowed by the FMLA — *although Mr. Basnett had not been on FMLA leave*.  The defendant told Mr. Basnett that the defendant had replaced him in April of 2019.

19.     Mr. Basnett sought reinstatement with the defendant on or about May 8, 2019, citing his reinstatement rights under RSA 281-A:25-a.

20.     The defendant advised Mr. Basnett that it could not re-employ him because it had terminated him in 2019.

## COUNT I

### (Wrongful Discharge)

21.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

22.     The defendant terminated Mr. Basnett with bad faith and malice, notifying Mr. Basnett by text message that it had terminated him, telling him in September of 2019 that the defendant had replaced him five (5) months earlier, ignoring its statutory obligation to reinstate him pursuant to RSA 281-A:25-a, and falsely attributing his termination to his purported

exhaustion of FMLA leave when the FMLA was inapplicable to Mr. Basnett as an injured employee exercising his right under New Hampshire law to workers' compensation benefits.

23.     The defendant fired Mr. Basnett in retaliation against him for performing acts encouraged by public policy.  Public policy encouraged Mr. Basnett to honor the restrictions set forth by his treating doctor on New Hampshire Workers' Compensation Medical Forms, to remain out of work during such times when his doctor indicated that his work-related injury disabled him from performing his job duties, and to exercise his right to temporary total disability benefits during such times pursuant to RSA 281-A:28.  In retaliation against Mr. Basnett for performing such acts as encouraged by public policy, the defendant fired Mr. Basnett.

24.     As a direct and proximate result of the defendant's wrongful discharge of Mr. Basnett, Mr. Basnett has suffered and continues to suffer damages, including but not limited to lost wages, lost employment benefits, lost earning capacity, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  Mr. Basnett is further entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the defendant's conduct in firing him.

WHEREFORE, the plaintiff Jason E. Basnett respectfully prays this Honorable Court:

A.     Schedule this matter for trial by jury, and after trial;

B.     Find the defendant liable for wrongful discharge;

C.     Award the plaintiff damages for lost wages, lost employment benefits, and lost earning capacity;

D.     Award the plaintiff damages for emotional distress, humiliation, inconvenience and loss of enjoyment of life;

E.     Award the plaintiff enhanced compensatory damages;

F.      Award the plaintiff interest and costs; and

G.      Grant such other and further relief as is just and equitable.

RESPECTFULLY SUBMITTED:

JASON E. BASNETT
By his attorneys,
DOUGLAS, LEONARD & GARVEY, P.C.

Dated:  December 23, 2020              By:     /s/ Benjamin T. King
                                               Benjamin T. King, NH Bar #12888
                                               14 South Street, Suite 5
                                               Concord, NH 03301
                                               (603) 224-1988
                                               benjamin@nhlawoffice.com